NOT DESIGNATED FOR PUBLICATION

No. 124,961

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of H.M.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD A. MACIAS, judge. Opinion filed October 21, 2022. Affirmed.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant natural mother.

*Julie A. Koon* assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

PER CURIAM:  Mother appeals the district court's decision terminating her parental rights over H.M. Mother claims the district court's findings of her unfitness are not supported by clear and convincing evidence. She also claims that termination of her parental rights was not in H.M.'s best interests. After thoroughly reviewing the record, we disagree with Mother's claims and affirm the district court's judgment.

FACTS

In May 2019, Mother and Father of H.M. (born in 2018) were pulled over in a traffic stop. A Sedgwick County sheriff's deputy determined Mother and Father were in possession of a stolen trailer. Mother and Father both had suspended driver's licenses and were arrested and transported to the Sedgwick County Adult Detention Facility. After

1

searching the vehicle, law enforcement determined H.M.'s car seat was loosely secured and there was a loaded handgun in H.M.'s diaper bag. H.M. was placed in police protective custody.

The State petitioned to adjudicate H.M. as a child in need of care (CINC). The district court held a temporary custody hearing, found probable cause to believe the State's allegations, and ordered H.M. be placed in protective custody of the Secretary of the Kansas Department for Children and Families (DCF) for out-of-home placement. Saint Francis Ministries (SFM) was assigned to supervise the case. The district court also appointed a guardian ad litem for H.M.

The State at first requested Mother and Father to: (1) complete a clinical interview and assessment of their physical, mental, or emotional status or needs as parents; (2) complete an examination and report of the medical condition and needs of H.M.; and (3) complete a developmental assessment of H.M. The State also requested Mother submit a hair follicle drug test every 90 days, submit random urinalysis (UA) tests, and take parenting classes.

Mother entered a no-contest statement to the allegations in the State's CINC petition. As a result, H.M. was adjudicated a CINC and the district court proceeded with disposition. The district court approved and adopted the State's proposed permanency plan, and H.M. was to remain in DCF custody with out-of-home placement.

At a permanency hearing in September 2019, the district court explained that reintegration continued to be a viable goal, but H.M. was to remain in DCF custody until further order of the district court. But in December 2019, H.M. reintegrated to Mother's custody where she remained for a few months under DCF supervision.

In June 2020, the district court ordered Mother and H.M. take a hair follicle drug test within 24 hours. Mother and H.M. each tested positive for methamphetamine. The district court then ordered SFM to immediately pick up H.M. and place her in respite care. The district court also ordered Mother to submit to a substance abuse evaluation.

H.M. remained in out-of-home placement for several months. In May 2021, the district court found reintegration was still a viable goal, but H.M. was not to return to Mother's care until further order of the court.

In August 2021, the State filed a motion for a finding of unfitness and termination of parental rights. The State alleged Mother was unfit by reason of conduct or condition rendering her unable to properly care for H.M. and such circumstances were unlikely to change in the foreseeable future. More specifically, the State alleged Mother's parental rights should be terminated based on her use of intoxicating liquors or narcotics or dangerous drugs of such duration or nature as to render her unable to care for the ongoing physical, mental, or emotional needs of the child, K.S.A. 38-2269(b)(3); failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family, K.S.A. 38-2269(b)(7); and lack of effort on Mother's part to adjust her circumstances, conduct, or conditions to meet H.M.'s needs, K.S.A. 38-2269(b)(8).

The district court held a hearing on the State's motion for a finding of unfitness and termination of parental rights on November 29, 2021. The State called Mother as its first witness. Mother testified that she had maintained full-time employment for about the last five years although she was furloughed for about seven months because of the COVID-19 pandemic. Mother acknowledged that she has suffered from drug abuse problems for about seven years. While Mother claimed to have graduated from her most recent drug treatment program, she admitted she took a drug test just before graduation and learned, after graduation, that she tested positive for methamphetamine. Mother

admitted that she last used methamphetamine the week before the termination hearing and submitted a positive hair follicle test the day of the hearing.

Mother acknowledged that her drug use was not fair to H.M. but explained: (1) She did not feel as though her addiction changed who she was as a mother; (2) she did not feel her drug use put H.M. at risk aside from H.M. being removed from the home; and (3) there was no reward in sobriety. Mother's plan for sobriety was simply to associate with positive people and disassociate with the negative people in her life. Mother was aware she continued to use methamphetamine even after the State had moved to terminate her parental rights. All the while, Mother claimed she could get clean and remain sober within 90 days.

Leanne Wonser, a permanency specialist with SFM, testified that she was assigned to H.M.'s case in 2019. Wonser testified that Mother at first completed nearly all her court orders but struggled with sobriety. Wonser at first had no major concerns with Mother's ability to parent, but Mother could not remain sober for longer than six months. After H.M. was reintegrated and later placed back into DCF custody, Wonser again tried to help Mother address her sobriety. When Mother said she voluntarily completed drug treatment, Wonser tried at least three times to find out about the drug treatment provider. Mother eventually signed a release for Wonser to obtain Mother's drug treatment records, but the facility had no record of Mother's attendance.

Wonser testified that Mother's visits with H.M. were limited to one-hour supervised visits because Mother continued to test positive for methamphetamine. Wonser explained that Mother's ability to care for H.M. would not change in the foreseeable future because of Mother's historical drug use and because Mother saw no reward in sobriety. Wonser testified it was in H.M.'s best interests to terminate Mother's parental rights and achieve permanency through adoption.

4

Amanda Galloway, a reintegration supervisor with SFM, testified that she was the administrative supervisor on H.M.'s case. Galloway admitted she had not personally spent time with Mother or H.M. Based on information in H.M.'s case file, Galloway recommended that H.M. receive permanency through adoption as Mother was unable to maintain sobriety. Galloway testified that in the best scenario, reintegration would take close to a year. She also testified that reintegration causes stressors on parents with drug problems and that these stressors can lead to relapse.

The State entered many exhibits into evidence including SFM court reports, Mother's relapse plan, Mother's positive drug tests, and an authorization for release of confidential information from A Clear Direction drug treatment facility with a return fax indicating no records existed. The exhibits showed that Mother submitted positive hair follicle drug tests for methamphetamine on May 9 and 30, 2019, July 17, 2019, February 25, 2020, May 26, 2020, June 17, 2020, February 23, 2021, May 20, 2021, and October 25, 2021. Mother also underwent both urinalysis and hair follicle drug tests on November 17, 2020. The test showed abnormal and invalid urine results and the hair follicle test was positive for methamphetamine. On June 30, 2021, Mother also tested positive for both amphetamine and methamphetamine.

After the State rested, Mother called one witness, Kelly Phillips, her best friend for the last eight years. Phillips attended most of Mother's visits with H.M. in Mother's home and was considered an aunt to H.M. and Z.J., Mother's other child not involved in this case. Phillips explained that Mother always had activities and snacks for H.M. She stated that H.M. had a strong bond with her sister, Z.J., and, based on personal observations, she believed it would harm H.M. to be removed from Mother and Z.J. Phillips stated that she supported Mother through her sobriety and was willing to help Mother financially. After hearing the evidence, the district court took the matter under advisement.

On December 9, 2021, the district court reconvened the hearing and made extensive findings on the record. The district judge summarized the evidence presented at the hearing and then focused on Mother's drug use, explaining:

"So here's what we have. It is by clear and convincing evidence that Mother has a drug problem. I don't think that is in dispute. Nobody is going to dispute that. And this has been for an extended period of time. And, sadly, Mother continues to have such a problem. I can't imagine what that is like, not being in that circumstance, but clearly a drug addiction takes over a person's life, and it's difficult to get out of even in the best of circumstances. From what I can tell, you have kind of associated yourself with some not such good people, it's not the best of circumstance.

"Mother's insight as to the need for sobriety, particularly when seeking to gain reintegration of her children, I must say, it's shortsighted at best, and remarkably disappointing, if not astonishing, at worst.

"Mother during her testimony had no clear plan how to remain sober in the future except repeatedly testifying and telling the Court that she just needs to be around positive people.

"While that certainly is a step in the right direction, there's no evidence to support any suggestion that she has been around positive people in the past and particularly in the recent past. In fact, the evidence is clear and convincing that she continues to associate with those negative people—that's by her own testimony—that are poor influence on Mother and regularly contribute in her ongoing drug addiction.

"And, Mother, remarkably, you seem to think that there's no reward in obtaining sobriety at this time unless the child is reintegrated with you. The Court kind of saw your position as you really—you might have a goal, 'I want to get the child reintegrated and I want to get sober,' but you had no plan to achieve that goal. There's two different things.

"Mother has repeatedly received and successfully completed outpatient treatment only to relapse and abuse drugs, particularly methamphetamine. There was another time there was cocaine in there, there was some amphetamine in there, but it seems to be the regular drug usage was methamphetamine, which is a bane on society.

The district court found that the State had shown by clear and convincing evidence that Mother was unfit based on "the use of intoxicating liquors or narcotics or dangerous

6

drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child," K.S.A. 38-2269(b)(3); "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family," K.S.A. 38-2269(b)(7); and "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child," K.S.A. 38-2269(b)(8). The district court also found by clear and convincing evidence that Mother's conduct or condition was unlikely to change in the foreseeable future. Finally, the district court found that termination of Mother's parental rights was in H.M.'s best interests. The district court's findings were later incorporated into a written journal entry. Mother timely appealed the district court's judgment.

### DID THE DISTRICT COURT ERR IN FINDING MOTHER UNFIT?

Mother argues, despite evidence of her substance abuse, she is not unfit by the use of intoxicating liquors or narcotic or dangerous drugs of such a duration or nature as to render her unable to care for H.M.'s ongoing physical, mental, or emotional needs. See K.S.A. 38-2269(b)(3). Mother also claims she is not unfit based on a failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family and because there was not a lack of effort on her part as a parent to adjust her circumstances, conduct, or conditions to meet H.M.'s needs. See K.S.A. 38-2269(b)(7), (b)(8).

The State argues that when viewed in the light most favorable to the prosecution, clear and convincing evidence supported the district court's conclusion that Mother's parental rights should be terminated because she was unfit and such condition was unlikely to change in the foreseeable future. More specifically, the State argues there was clear and convincing evidence to support the district court's finding of unfitness under each statutory subsection cited by the court. See K.S.A. 38-2269(b)(3), (b)(7), and (b)(8).

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). As a result, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

As provided in K.S.A. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, this court views all evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re B.D.-Y.*, 286 Kan. at 705; *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, this court does not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a CINC. K.S.A. 38-2269(a). The statute lists nonexclusive factors the court shall consider in determining unfitness. K.S.A. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

The district court relied on three statutory factors to find Mother unfit. The statutory factors included:

- Use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child under K.S.A. 38-2269(b)(3);
- Failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family under K.S.A. 38-2269(b)(7); and
- Lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child under K.S.A. 38-2269(b)(8).

*Use of intoxicating liquors or narcotic or dangerous drugs*

The district court found Mother unfit under K.S.A. 38-2269(b)(3) because of her history of using methamphetamine, rendering her unable to care for the ongoing physical, mental, or emotional needs of her child. Mother admitted she was a drug addict and used methamphetamine but was trying to address her ongoing drug problem, though she did not see any reward or benefit to getting sober. Mother essentially argues she was still able to meet H.M.'s physical, mental, and emotional needs and substantially complied with her case plan apart from using methamphetamine.

Mother successfully completed four drug treatment programs but continued to relapse. At the termination hearing, Mother testified she completed her last drug treatment program on her own initiative, but SFM never received documentation of the evaluation or treatment. In fact, SFM reached out to the facility in which Mother claimed she received treatment, but the facility had no record of Mother receiving any services. The State points out Mother completed many of her court orders but "failed to address the one issue in her life that was the most important—her sobriety."

In *In re A.R.*, No. 121,298, 2020 WL 1969324, at *9 (Kan. App. 2020) (unpublished opinion), this court found there was clear and convincing evidence of

9

parental unfitness where a parent continued to test positive for drugs throughout the proceedings. This court explained that evidence showed the parent's unwillingness to modify addictive behavior, even with full knowledge that failure to produce clean UAs would cause continued limitations on visits and would risk termination of parental rights. 2020 WL 1969324, at *9. This court also explained that the parent's failure to curtail illegal drug use adversely affected the child's need for parental love, care, and attention during the proceedings. 2020 WL 1969324, at *9.

Mother's conduct was remarkably similar to the parental conduct in *In re A.R.* Mother exhibited awareness that the district court considered her methamphetamine use to be detrimental to reintegration with H.M., yet she continued to test positive for methamphetamine while litigation was pending. Mother acknowledged her illegal drug use limited her ability to have H.M. in her home. Even with the prospect of Mother having her parental rights terminated, she did not curtail her drug use. In fact, Mother tested positive for methamphetamine on the day of her termination hearing.

Mother mostly complied with her case plan tasks aside from her drug use. She was employed and earning about $1,400 every two weeks, she had a working vehicle with liability insurance, and she completed parenting classes and other assigned evaluations and assessments. Mother maintained appropriate housing throughout the duration of the case though she did briefly live with a family member. Mother also maintained employment though she was furloughed during the COVID-19 pandemic and received unemployment benefits until October 2020 when she found a new job.

Mother's SFM caseworker, Leanne Wonser, testified, "[W]e don't have a concern with [Mother's] parenting. She does really well with parenting, but it is the sobriety that we were concerned with." Wonser stated the reason she was recommending termination of Mother's parental rights was because of sobriety. But Wonser explained that she would not recommend reintegration even if Mother achieved sobriety in six to nine months

10

because damage had been done to H.M. Mother's SFM reintegration supervisor, Amanda Galloway, also testified Mother did well parenting in the one-hour supervised visitations with H.M. but long-term sobriety was an ongoing concern.

Just as in *In re A.R.*, Mother's drug use limited her visits with H.M. and frustrated reintegration efforts. Mother essentially testified she had no incentive to discontinue her drug use and could not see the reward for becoming sober was reintegration with H.M. Mother's drug use alone may not have supported the district court's finding of unfitness. However, we find there was clear and convincing evidence showing that Mother was unfit based on her history of using methamphetamine as to render her unable to properly care for the ongoing physical, mental, and emotional needs of H.M.

*Reasonable efforts by appropriate agencies and lack of effort to adjust circumstances*

Mother challenges the district court's finding of unfitness under K.S.A. 38-2269(b)(7)—failure of reasonable efforts by appropriate public or private agencies to work toward reintegration of the child. Mother also challenges the district court's finding of unfitness under K.S.A. 38-2269(b)(8)—lack of effort to adjust her circumstances to meet H.M.'s needs. Mother emphasizes the value of family time between parents and children during the reunification process and argues she was not given a chance to show her parenting abilities. She argues SFM failed to follow DCF procedure by limiting her to one-hour supervised visits with H.M. based on her positive drug tests.

"'The purpose of the reasonable efforts requirement is to provide a parent the opportunity to succeed, but to do so the parent must exert some effort.' [Citation omitted.]" *In re M.S.*, 56 Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019). Agencies must expend reasonable efforts toward reintegration but need not make "a herculean effort to lead the parent through the responsibilities of the reintegration plan." *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8 (Kan. App. 2015) (unpublished opinion).

11

SFM provided opportunities for Mother to succeed, and Mother largely complied with her case plan except for her drug use. Mother cites the DCF Policy and Procedure Manual, explaining visitations must not hinge on whether the parent or child is completing case plan tasks or behaving appropriately. DCF PPM § 3237(1)(1) (2022), http://www.dcf.ks.gov/services/pps/pages/ppspolicies.aspx. But Mother narrowly focuses on her one-hour supervised visits with H.M. and fails to acknowledge she at first had four-hour unsupervised visits with H.M. in her own home. Wonser even noted the visits were going well and there were no concerns with Mother's parenting at that time.

H.M. was then reintegrated with Mother, and Wonser worked on a relapse plan with her. But reintegration did not go well because Mother and H.M. both tested positive for methamphetamine, and H.M. was placed in respite care. Despite Wonser's efforts to work on a relapse plan with Mother prior to reintegration, Mother failed to follow the terms of the plan and notify SFM when she relapsed. It was not until after H.M. was placed in respite care that Mother's visits were limited to one hour. Mother's visits did not progress because she continued to test positive for methamphetamine and she sometimes wanted to work the case plan with Father, who was not progressing in his case plan.

Mother's case managers referred her for substance abuse evaluations, prepared a reintegration plan and relapse plan with her, and prepared achievement plans with her throughout the case. Wonser testified she stressed Mother timely complying with drug testing and recommended she attend Narcotics Anonymous. When Mother claimed to have completed a new substance abuse assessment, Wonser made at least three requests for Mother to sign a release of information so Wonser could obtain documentation from the treatment provider. Mother eventually provided Wonser with the name of the facility, but the facility had no record of Mother receiving treatment.

We find there was clear and convincing evidence that SFM provided reasonable efforts for Mother to succeed in working toward reintegration with H.M. We also find

12

there was clear and convincing evidence of a lack of effort on Mother's part to adjust her circumstances to meet H.M.'s needs. SFM did not have to make a herculean effort to lead Mother through the responsibilities of the reintegration plan, and, despite reasonable efforts by SFM, Mother failed to exert the necessary effort with respect to her drug use. Finally, there was clear and convincing evidence to support the district court's finding that Mother's conduct or condition was unlikely to change in the foreseeable future.

WAS TERMINATION OF PARENTAL RIGHTS IN H.M.'S BEST INTERESTS?

Mother claims the termination of her parental rights was not in H.M.'s best interests. Mother claims she had a strong bond with H.M.; H.M. had a strong bond with her older sister, Z.J.; and H.M.'s emotional needs would best be met by keeping her with her family. The State argues it was in H.M.'s best interests to have a stable home with a sober parent and, thus, the district court properly terminated Mother's parental rights.

Upon making a finding of unfitness of the parent, the district court must "consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotion health of the child." K.S.A. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusting the district court to act within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1114-16. This court reviews a district court's best-interests determination for an abuse of discretion, "which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. [Citation omitted.]" 50 Kan. App. 2d at 1116. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Here, the district court found Mother unfit, and her unfitness was unlikely to change in the foreseeable future under K.S.A. 38-2269(b)(3), (b)(7), and (b)(8). Viewing the evidence in the light most favorable to the State, a rational fact-finder could find it was in H.M.'s best interests to terminate Mother's parental rights and allow H.M. to obtain permanency through adoption into a stable, drug-free home. A reasonable fact-finder could agree with the termination of Mother's parental rights based on Mother's drug use, multiple relapses, and H.M.'s positive drug test for methamphetamine. Thus, we find the district court properly considered H.M.'s physical, mental, and emotional needs in finding it was in H.M.'s best interests to terminate Mother's parental rights.

Affirmed.